UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NANCY HOYT, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02-cv-1758 (JCH) |
| | : | |
| DEPARTMENT OF CHILDREN | : | |
| AND FAMILIES, | : | |
| Defendant. | : | MARCH 17, 2004 |

**RULING  RE: DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 17]**

Plaintiff Nancy Hoyt ("Hoyt") brings this sex discrimination action pursuant to

Title VII, see 42 U.S.C. §2000e et seq., against her employer, the State of Connecticut's

Department of Children and Families ("DCF" or "the agency").  DCF made a motion for

summary judgment [Dkt. No. 17], claiming that there is no issue of fact concerning Hoyt's

claim of discrimination against her on the basis of her sex.  The court agrees with DCF and

grants its motion for summary judgment.

**I.      FACTS & PROCEDURAL HISTORY**

The following recitation presents the facts in the light most favorable to Hoyt but

notes any material factual disputes between the parties.  The court notes that the parties do

not dispute the principal underlying events giving rise to this lawsuit.

To understand Hoyt's claim, some background on the various ways in which DCF

jobs are classified by Connecticut's Department of Administrative Services ("DAS") is

necessary.  According to both parties, all DCF employees hold a formal position or position title, referred to as an employee's "job classification," established by the Department of Administrative Services ("DAS").  See Defendant's Local Rule 56(a) Statement of Undisputed Facts [Dkt. No. 19] ("Def's Statement") at 2, ¶ 5; Plaintiff's Local Rule 56 Statement [Dkt. No. 22]  ("Pl's Statement") at 1, ¶ 5.  An employee's "job classification," e.g., State School Principal II, State School Department Head or Pupil Services Specialist, and the Collective Bargaining Agreement ("CBA") affect her pay level, vacation, and benefits.  See Def's Statement at 2, ¶6; accord Pl's Statement at 1, ¶6.  In contrast, other job appellations, such as educational consultant, refer to the function an employee performs in her job, but do not directly correspond to the employee's pay level. As Hoyt explained: "It is confusing because they [DCF] call us one thing, and they pay us as another thing."  See Defendant's Index of Evidence in Support of Its Motion for Summary Judgment ("Def's Index") [Dkt. 20], Ex. 1: Hoyt Dep. at 57.  The job classification of State School Department Head is a supervisory position with a higher pay grade than that of Pupil Services Specialist.  See Def's Statement at 5, ¶22; accord Pl's Statement at 2, ¶22.

In March of 1985, Hoyt began her employment with the State of Connecticut's Department of Mental Retardation ("DMR") as a Behavior Modification Program Specialist.  On or about August 1, 1986, she was promoted in her employment with the

DMR to the position of Mental Retardation Education Program Supervisor.  On May 12, 1992, Hoyt was offered a position with the State of Connecticut Department of Children and Youth Services ("DCYS") as a State School Department Head, which she accepted. On November 12, 1993, Hoyt was reassigned to a unit at the Central Office of DCYS, which had by then been renamed DCF.  See Def's Statement at 1-2, ¶¶ 1-4; accord Pl's Statement at 1, ¶¶ 1-4.  It was Hoyt's attempts to transfer from this position to a new one that gave rise to the principal events that serve as the basis for this lawsuit.

On September 7, 2001, while Hoyt was still working in this position and being paid at the State School Department Head level, another DCF employee, Marilyn Earle, resigned her job as State School Teacher, the pay grade for which was equivalent to that of Pupil Services Specialist.  In October of 2001, DCF requested permission from DAS to fill this vacancy with someone who would perform the functional duties of providing educational consulting services, i.e. regional educational consultant or educational consultant, in the school district with the job classification of State School Department Head, a higher pay grade than Pupil Services Specialist.  DAS conducted an audit to determine the appropriate job classification level for the position.  DAS determined that any open DCF positions filled to perform the functional role of regional educational consultant could not be staffed with a job classification higher than Pupil Services Specialist because the functional duties did not require a supervisory level position, which State

3

School Department Head was.  <u>See</u> Def's Statement at 5, ¶¶21-22; <u>accord</u> Pl's Statement at 2, ¶¶21-22.

Hoyt requested a lateral transfer to this open position with the aim of maintaining her current job classification level and pay as a State School Department Head.  Her request was denied.  <u>See</u> Def's Statement at 6, ¶¶26-27; <u>accord</u> Pl's Statement at 2, ¶¶27 and 28 (first sentence).

DCF informed Hoyt that, if she were to apply for and accept the vacant regional educational consultant position, she would be paid at the Pupil Services Specialist level.[1] Hoyt also understood that she could stay in her current role as State School Department Head in the No-Nexus Unit within the Central Office with no reduction in pay or benefits.  <u>See</u> Def's Statement at 10, ¶49; <u>accord</u> Pl's Statement at 3, ¶49.  With the expectation that she would challenge the reduction in pay after accepting the regional educational consultant position, Hoyt accepted the job after an interview in early December of 2001.  Def's Index,

---

[1]  Hoyt denied ¶50 of defendant's Rule 56(a) statement.  However, her cited basis, her interrogatory answers, do not contain any evidence to dispute the following statement.

A letter, written by Personnel Officer Joseph Bleicher to Hoyt and dated January 18, 2002, begins: "This letter is to confirm your acceptance of a voluntary demotion to a Pupil Services Specialist position at the Bridgeport Office of the Southwest Region . . . ."  Def's Index, Ex. 10: Bleicher Letter.  On February 24, 2002, Hoyt used nearly identical language in a letter she wrote to Bleicher: "This letter is to confirm my acceptance of the job offer for the position of Education Consultant for the Southwest Region.  I am aware that accepting this position requires that I be reduced in grade from my current Department Head position to that of Pupil Services Specialist.  I have filed an appeal with the Office of Civil Rights to retain my Department Head status."  Def's Index, Ex. 12: Hoyt Acceptance Letter.

Ex. 12; Hoyt Acceptance letter.

Hoyt claims that DCF engaged in sex discrimination by refusing to allow her to maintain her job classification as State School Department Head when she accepted the position of educational consultant in the Southwest Region. As evidence of disparate treatment, she offers the cases of the four identified male employees of DCF, Raymond Galloway, William Howe, George Zitnay, and David Regan, all of whom served as regional educational consultants but whose job classifications were higher than that of Pupil Service Specialist.[2] See Pl's Statement at 10, ¶28 and Ex. A, at Interrogatory Ans. 3.

The parties agree that, in March of 1996, Galloway was allowed to take his State School Principal II job classification with him when he began serving as an educational consultant. Subsequently, in November of 1997, Zitnay and Regan were allowed to take their State School Department Head job classifications with them when they were reassigned to work as regional educational consultants. Apparently, Howe was also allowed to take his State School Department Head job classification when he went to work as regional educational consultant.[3]

_____

[2]    Hoyt also mentions Howard Haberman as "a male Education Consultant serving in a regional office," who was offered a promotion to Department Head, Pl's Statement at 10, ¶27, but, other than this hearsay assertion, she offers no evidence in support of that assertion.

[3]    Other than this information, which the parties do not appear to dispute, the court has not been provided with any information about Howe. See, e.g., Def's Index, Ex. 1: Hoyt Dep., at 8. A review of the record revealed no further information about the circumstances surrounding Howe's move.

5

The court construes Hoyt's pleadings as alleging two related claims: one, that the DAS audit improperly classified the job vacated by Earle, and into which she moved, as a Pupil Services Specialist position, and, two, that DCF improperly denied her request for a lateral transfer that would have allowed her to maintain her existing job classification while serving as regional educational consultant.  Hoyt argues that her regional education consultant job should not have been classified as an entry-level Pupil Services Specialist position, in part because regional education consultants have greater autonomy and perform more complicated or specialized tasks, including supervisory tasks.  Hoyt suggests that these circumstances demonstrate that DCF discriminated against her based on her sex in denying her the opportunity to transfer while maintaining her State School Department Head job classification.  In support of her claims, however, Hoyt offers only her own somewhat conclusory response to DCF's interrogatories and requests for production, along with various other documents that simply do not present evidence on the core issue in her case: i.e., whether DCF discriminated against Hoyt, based on her sex, by misclassifying her job as Pupil Services Specialist position or by refusing to grant her a lateral transfer.  See Pl's Statement, Ex. A.[4]

In response, DCF contends that, in refusing to allow Hoyt to occupy the regional

---

[4]  Hoyt's counsel has provided the court approximately 50 exhibits, all of which are not paginated and are labeled only as Exhibit A, making it difficult for the court to refer to these materials in this Ruling.  Thus, the court will cite instead to the Defendant's Index of Exhibits whenever both parties have provided the same exhibit.  See Pl's Statement, Ex. A:

educational consultant post with her State Department Head classification, it was merely complying with a court-ordered decree and its own internal policies and practices, and those of the Department of Administrative Services ("DAS"), including a collective bargaining agreement ("CBA") with the union. In support of these assertions, DCF offers Hoyt's deposition, <u>see</u> Def's Index, Ex. 1: Hoyt Dep., and affidavits from two of its employees, <u>see</u> Def's Index, Ex. 2 & 3: Estrella & Galloway Affidavits, along with other documentation.

By way of justification, DCF states that a 1992 federal court decree required it to provide educational consulting services in its five regional offices in Unified School District II.[5] However, because the agency was not given additional positions to enable it to comply with this court decree, DCF was forced to assign the functional role of educational consultant to existing employees with a range of job classifications.

According to DCF, when a union employee at DCF is reassigned duties and is not filling an open position, the CBA does not permit the agency involuntarily to lower his job classification.[6] In contrast, according to DCF, when there is an open or new position, DAS assigns a job classification to the position based on the duties to be performed. For

---

[5] Hoyt does not take issue with this particular statement. She does dispute some aspects of the general narrative offered by DCF, which is described by the court in the sentences that follow above. However, Hoyt does not offer any evidence to support her view. <u>See</u> Pl's Statement, Ex. A: Pl's Responses to Def's Interrogatories and Requests No. 10.

[6] Hoyt does not dispute this statement. <u>See</u> Pl.'s Statement at 1, ¶ 12.

these reasons, DCF contends that a person filling an open position may be hired with a different job classification (i.e. a lower pay grade) than some of the people currently performing those duties, as is the case with the regional educational consultant position. Thus, according to DCF, when it initially reassigned male employees from its Central Office to provide regional educational consultant services in its regions in compliance with the court decree, these men were transferred with their existing job classifications as Pupil Services Specialists.[7]

Likewise, with respect to the four males Hoyt claims are similarly situated, DCF argues that it was merely following these sex-neutral procedures and policies. For example, in March of 1996, when Galloway was temporarily reassigned to the Hartford office, he was allowed to transfer with his State School Principal II status because he was merely being temporarily reassigned to remedy understaffing in the area of educational consulting services in that office, rather than to fill an open position. See Def's Statement at 4, ¶¶17-18; accord Pl's Statement at 2, ¶¶17-18. DCF asserts that Zitnay and Regan were likewise allowed to retain their job classifications as State School Department Heads when they

_____

[7] These employees, who were all men, were Howard Haberman, Tom Callahan, and George Koczon. Hoyt does not include them in her list of similarly situated men who received more favorable treatment than she did, perhaps in part because these men were all transferred with their Pupil Services Specialist job classifications. See Def's Statement at 4, ¶15; accord Pl's Statement at 2, ¶15. Thus, their transfer could support the conclusion that the regional educational consultant role was properly classified as a pupil services specialist position and could be interpreted in such a way as to undermine Hoyt's sex discrimination claim.

8

were reassigned to work as regional educational consultants because they were not transferred to fill open positions.  See Def's Statement at 5, ¶22; accord Pl's Statement at 2, ¶22.

In contrast to the transfers of these male employees, DCF claims that the regional educational consultant post filled by Hoyt was an open position created by Earle's resignation.[8]  As a result, DCF argues that it was bound by the DAS job classification. DCF also claims that, since the time when it was informed by DAS that the proper classification for the functional duties of a regional consultant was that of Pupil Services Specialist, no employee has been hired at a higher pay level and no State School Department Head has been reassigned to those duties.  See Def's Statement at 12, ¶ 59[9] See Pl's Statement at 4, ¶59 (to time of plaintiff's depo.).

On or about May 3, 2003, Hoyt filed a complaint with the Equal Employment Opportunity Commission ("EEOC") concerning DCF's refusal to offer her the educational consulting position with her State School Department Head status.  On July 13, 2002, Hoyt received a right to sue letter from the EEOC.

Hoyt commenced this Title VII sex discrimination action by filing a complaint,

---

[8]  DCF notes, and Hoyt does not dispute, that she is the only employee to have obtained an educational consultant position as a result of a retirement.  See Def's Statement at 12, ¶ 60; Pl's Statement at 4, ¶60.

[9]  Although Hoyt disputes this statement, she offers no evidence to the contrary.

dated September 30, 2002 [Dkt. No. 1].  On October 26, 2002, she filed her Amended Complaint [Dkt. No. 7], the operative complaint in this action, in which Hoyt seeks to recover compensatory and punitive damages, attorney's fees and costs, and a temporary and permanent injunction restoring her retroactively to her department head status.

DCF has moved for summary judgment [Dkt. No. 17] on the basis that there are no genuine issue of material facts and that Hoyt has not met her burden of showing that DCF discriminated against her based on her sex.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©);  Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000).  The moving party bears the burden of showing that no genuine factual dispute exists.  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  In assessing the record to determine if such issues exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 721 (2d Cir.1994).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."

Anderson, 477 U.S. at 255. When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)). Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

### III.    TITLE VII STANDARDS

"Since 1964, Title VII has made it an 'unlawful employment practice for an employer . . . to discriminate against any individual . . ., because of such individual's race, color, religion, sex, or national origin.'" Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2150 (2003)(citing 42 U.S.C. § 2000e-2(a)(1)).

In cases brought under Title VII, courts follow the now-familiar, burden-shifting analysis first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-149 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-511 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-256 (1981).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court "set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment." Burdine, 450 U.S. at 253. The initial burden in a disparate treatment claim brought under Title VII is on the plaintiff to establish a prima facie case of discrimination. To do so, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Once

a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  Upon the articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the prima facie case drops out.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993).

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment decision.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).  In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination.  Id.  As the Supreme Court explained in Reeves:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.  In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147 (citations omitted).

13

Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have further evidence of discrimination. Id.; see also Zimmerman v. Assoc. First Capital Corp., 251 F.3d 376, 381-82 (2d Cir. 2001). Ultimately, a finder of fact may consider the strength of the prima facie case, the probative value of the proof that the defendant's reason is pretextual, and any other evidence presented in the case when determining if the plaintiff has sustained her burden. Zimmerman, 251 F.3d at 381-82.

However, even courts mindful of the fact that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated" have nonetheless granted summary judgment at the pretext stage where the plaintiff has "provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext." See Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985); see also Dister, 859 F.2d 1108; Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998)(reversing jury verdict in ADEA case because "Norton's very weak prima facie case, combined with an at best highly dubious showing of pretext, that in itself does not implicate discrimination, is simply not enough to support the jury's conclusion that he was fired because of his age."). According to the Second Circuit Court of Appeals in Meiri, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all

Title VII cases." See 759 F.2d at 98.

## IV.    DISCUSSION

In order to survive DCF's motion for summary judgment, Hoyt must show that there is an issue of material fact about whether defendant discriminated against her on the basis of her sex. See St. Mary's Honor Center, 509 U.S. at 511; Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997) (en banc).  Reviewing the record as whole, as a jury would, see Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999), the court concludes that, although Hoyt has established a prima facie case, DCF has supplied a legitimate, non-discriminatory reason for its actions, and Hoyt has failed to produce any evidence suggesting that this reason is pretextual.  The court concludes that Hoyt has not raised any issue of material fact about DCF discriminating against her on the basis of her sex and therefore grants DCF's motion for summary judgment.

Hoyt has succeeded in establishing a prima facie case of sex discrimination.  "The burden of establishing a prima facie case of disparate treatment is not onerous." Burdine, 450 U.S. at 253.  First, as a woman, Hoyt is a member of a protected class.  Second, DCF does not question that she was qualified to serve as regional educational consultant.  Third, she suffered an adverse employment action in being denied a lateral transfer that would have allowed her to move to this position while maintaining her department head status and pay.  Fourth, this refusal occurred under circumstances giving rise to an inference of

discrimination: four male DCF employees made a similar transfer but did not likewise have their job classifications diminished.

However, the court also concludes that DCF has met its burden of production by proffering a legitimate, nondiscriminatory reason for denying Hoyt the possibility of a lateral transfer without a reduction in status.  DCF produces compelling evidence that Galloway, Zitnay, and Regan received different treatment because they were not, in fact, similarly situated.  These men were granted lateral transfers, and thus allowed to maintain their job classifications, because they were moved in response to a special demand for regional consultants resulting from the need to comply with a consent decree and respond to staffing shortages within the agency.  By contrast, the educational consultant position for which Hoyt applied was an open position created by a retirement, a set of circumstances which enabled DAS to conduct an audit to determine the appropriate classification for the position and pay the person who filled the position.  In sum, because the men did not move into "open" positions, the policies and procedures of DCF, informed at least in part by the CBA, required that they be allowed to maintain their existing job classifications.

Any claim made by Hoyt that the audit improperly classified the job she accepted as a pupil services specialist position is undermined by the undisputed fact that, when DCF

initially reassigned three other male employees[10] from its Central Office to provide regional educational consultant services to its five regions in compliance with the court decree, all of these men were transferred with their existing job classifications, which happened to be Pupil Services Specialist. Thus, it appears clear that Hoyt's case was different, not because she is a woman, but because she was the only employee to have obtained an educational consultant position as a result of an opening created by a retirement.

Finally, the court notes that, faced with DCF's ostensibly legitimate business reason, Hoyt has produced neither independent evidence of discrimination, nor any evidence that this proffered reason is pretextual. See Reeves, 530 U.S. at 147; see also Zimmerman v. Assoc. First Capital Corp., 251 F.3d 376, 381-82 (2d Cir. 2001). Aside from her flat denials in response to DCF's reason, Hoyt produces only her own answers to DCF's interrogatories. To the extent her answers are contrary to DCF's evidence, they are merely conclusory statements, which are simply insufficient to create a genuine issue of material fact concerning whether DCF's proffered justification is pretextual. Hoyt admitted in her deposition that she had no evidence to dispute that DAS told DCF that "the proper classification [for the regional consultant positions] was Pupil Services Specialist." Def's Statement (citing Def's Index, Ex 1: Hoyt Dep. at 51).

---

[10] See infra, note 7 and accompanying text.

As noted above, in support of her claim that her regional education consultant job was misclassified as an entry-level Pupil Services Specialist position, Hoyt cites the fact that regional educational consultants possess greater autonomy and perform more complicated or specialized functions, including supervisory tasks, than Pupil Services Specialists. Unfortunately, aside from her conclusory affidavit, Hoyt provides the court with no evidence that would allow it to evaluate, let alone accept, such a claim.  Moreover, even if the court were to accept Hoyt's conclusory allegations that regional educational consultants perform more complex or specialized functions than most other jobs classified as Pupil Services Specialist positions and thus that the job classification was not a perfect fit, she provides no evidence to suggest that the Department Head classification would have been more appropriate than the one given by DAS, and she presents no evidence of discriminatory intent in DAS's response to DCF's request for a classification.

In sum, Hoyt has failed to create a record which puts in issue DCF's legitimate business justification.  The court concludes that, even when viewing the facts in the light most favorable to her, Hoyt has not met her burden of producing evidence sufficient to raise an issue of material fact that DCF discriminated against her based on her sex in denying her a lateral transfer.  DCF's motion for summary judgment is therefore granted.

## III.    CONCLUSION

For the foregoing reasons, DCF's motion for summary judgment [Dkt. No. 17] is

GRANTED.  The clerk is directed to close the case.

**SO ORDERED.**

Dated this 17th day of March, 2004, at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

19